UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SWISS REINSURANCE AMERICA CORPORATION, A New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE PHINEAS CORPORATION, A Florida corporation,<br><br>Defendant. | Case No. 03-22921 CIV-ALTONAGA<br>Magistrate Bandstra<br>(Pending in the Southern District of Florida)<br>MISC Bus Docket<br>Multi-District Business No.<br>04MBD 10208 |

## LIBERTY MUTUAL INSURANCE COMPANY AND GARY R. GREGG'S MEMORANDUM IN SUPPORT OF THEIR EMERGENCY MOTION TO QUASH THIRD-PARTY SUBPOENAS

### INTRODUCTION

Liberty Mutual Insurance Company ("Liberty") and Gary R. Gregg ("Gregg"), who is Director and Executive Vice President of Liberty, submit this memorandum in support of their emergency motion to quash the third-party subpoenas (the "Subpoenas") served upon them by defendant The Phineas Corporation ("Phineas") in connection with the above-captioned litigation that is pending in the Southern District of Florida (the "Florida Litigation").

The Subpoenas seek the production of documents, testimony from a Liberty representative pursuant to Fed. R. Civ. P. Rule 30(b)(6), and testimony from Gregg, individually. They are overly broad and unduly burdensome because, *inter alia*, the information and testimony sought from Liberty and Gregg is not reasonably calculated to lead to the discovery of admissible evidence relevant to the claims and defenses in the Florida Litigation. In short, in the Florida Litigation, Phineas and Swiss Reinsurance

America Corporation ("SwissRe") dispute which of them, pursuant to an Indemnity Agreement, must post the collateral to replace an Amwest bond, now that Amwest is insolvent. Liberty is not a party to that Indemnity Agreement.

In addition, Phineas' insistence on deposing Gregg, who is a senior member of Liberty management and who has had no involvement with the issuance of the Amwest bond, the security arrangements associated with a 1999 workers' compensation policy issued to Phineas by Liberty and its affiliate, or the current dispute between Phineas and SwissRe, is especially harassing and unduly burdensome.

## FACTUAL BACKGROUND

Liberty (via its affiliate, Employers Insurance Company of Wausau ("Wausau")), issued a workers' compensation policy (the "Policy") to Phineas in 1999. See Affidavit of Mark Savage, ¶ 4. Phineas' premium and deductible obligations under the Policy were secured, in part, by a $225,000 bond issued by Amwest Surety Insurance Company ("Amwest"). Id. After Amwest was declared insolvent, a dispute arose between SwissRe, who is Amwest's reinsurer, and Phineas with regard to which party, thereafter, had a duty to assume Amwest's security obligations to Liberty under the $225,000 bond. Id., ¶5; Affidavit of Sara Jane Shanahan, Ex. A (attaching Florida Complaint). In the Florida Litigation, SwissRe claims that its obligations of reinsurance are subject to Phineas' obligation to indemnify SwissRe on the Amwest bond, or to provide security to support the Amwest bond. Shanahan Aff., Ex. A (Florida Compl., ¶¶ 17-18). In support of its claims, SwissRe relies upon a May 20, 1999 Commercial Surety General Indemnity Agreement (the "Indemnity Agreement"), which is between Phineas, on the one hand,

and Amwest and its affiliates, including its reinsurers, on the other hand. Liberty is not a party to the Indemnity Agreement. Id., Ex. A (Florida Compl., Ex. A).

In June 2004, Phineas served the Subpoenas on Liberty and Gregg, seeking a broad category of documents, testimony from a Liberty representative pursuant to Rule 30(b)(6), and testimony from Gregg, individually. See Shanahan Aff., Exs. A and B. Specifically, the Subpoenas seek documents relating to, *inter alia*:

1. the Policy and related security agreements, and any other workers' compensation policies issued to Phineas;
2. SwissRe's reinsurance of Amwest;
3. issuance of bonds, demands upon bonds, or reinsurance of bonds issued on behalf of Phineas;
4. "Any and all documents in any matter relating to surety bonds for worker's compensation insurance through issued policies of Liberty Mutual or Employers Insurance of Wausau and/or relating to any indemnity agreements related to any such policies."
5. the Complaint and the Answer in the Florida Litigation;
6. all correspondence between Liberty/Wausau and Phineas, on any topic;
7. collateral or security or indemnity agreements related to the Policy; and
8. correspondence between SwissRe and Liberty/Wausau, on any topic.

The Subpoena to Liberty, which purports to seek testimony pursuant to Rule 30(b)(6), does not set forth an appropriate list of topics for the deposition. See Shanahan Aff., Ex. A. Instead, Phineas seeks testimony from Liberty relating to, *inter alia*:

1. SwissRe's Complaint and Phineas' Answer and Affirmative Defenses in the Florida Litigation;
2. any and all communications between SwissRe and Liberty/Wausau relating to the Amwest bond or the Indemnity Agreement;
3. any and all communications between Liberty and Phineas, on any topic; and
4. all litigation in which Liberty/Wausau has been involved related to any Amwest bonds; and
5. "Knowledge of facts, documents and/or witnesses relating to Defendant's Affirmative Defenses."

On July 8, 2004, Liberty served timely objections to the Subpoenas, and thereafter, sought to narrow the scope of the Subpoenas via agreement. Shanahan Aff.,

3

Exs. C and D.[1] Late in the day on July 16, 2004, counsel for Liberty and Phineas conferred in an attempt to reach an agreement regarding the scope of the Subpoenas. Shanahan Aff., ¶ 6. Because Phineas insisted that Gregg appear for deposition, despite Liberty's representation that Gregg would sign an affidavit affirming that he has not been involved with the Policy or security arrangements related thereto, no compromise could be reached. Id.; Affidavit of Gary R. Gregg, ¶ 7. Accordingly, Liberty was left with no choice but to file this Motion to Quash the Subpoenas.

## ARGUMENT

I. The Subpoenas Are Unduly Burdensome Because They Seek Information That Is Not Relevant To The Florida Litigation.

In order to protect third parties from unnecessary discovery, the Federal Rules of Civil Procedure mandate that a court "shall quash or modify the subpoena if it ... subjects a person to undue burden." Fed. R. Civ. P. Rule 45(c)(3)(A)(iv). This rule recognizes that third parties, which have no stake or role in the underlying litigation, are entitled to certain protections from other parties' adversarial proceedings. See Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998)("[T]he respondents are strangers to the . . . litigation; insofar as the record reflects, they have no dog in that fight. Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); Addamax Corp. v. Open Software Foundation, Inc., 148 F.R.D. 462, 468 (D. Mass.

---

[1] Neither Liberty nor Gregg will produce documents responsive to the Subpoenas until a compromise on the scope of the requests is reached or an Order to Compel is issued by the Court. See Fed. R. Civ. P. Rule 45(c)(2)(B).

4

1993)("[D]iscovery permitted to be obtained from non-parties may be more limited in some circumstances than discovery permitted to be obtained from parties."). "Determinations of issues of 'undue burden' are committed to the discretion of the trial court." Jones v. Hirschfeld, 219 F.R.D. 71, 74 (S.D.N.Y. 2003).

Liberty and Gregg seek to quash the Subpoenas issued by Phineas in this case because, *inter alia*, the information sought by the Subpoenas is not reasonably calculated to lead to the discovery of admissible evidence relevant to the critical issue to be decided in the Florida Litigation. In particular, the Florida Court will interpret and apply the Indemnity Agreement in order to determine whether SwissRe or Phineas must replace the Amwest bond, in light of Amwest's insolvency. Because Liberty and Gregg are not parties to the Indemnity Agreement, the broad requests for documents and deposition testimony related to security for the Policy and other irrelevant topics (e.g. other litigation involving Amwest bonds, and any and all correspondence between Liberty and Phineas) are unduly burdensome and are not reasonably calculated to lead to the discovery of admissible evidence. Indeed, the Subpoenas appear to be targeted more toward coercing Liberty into releasing Phineas from its security obligations related to the Policy than anything else. For these reasons alone, the Subpoenas should be quashed. See Liberty Mut. Ins. Co. v. Diamante, 194 F.R.D. 20, 23 (D. Mass. 2000)(sanctioning attorneys for issuing third-party subpoenas designed to gain leverage rather than to discover relevant information).

II. The Subpoena for Gregg's Deposition Should Be Quashed.

Given that Liberty's relevance to the Florida Litigation is tangential, at best, Phineas offers no valid reason for seeking to depose Gregg, who is Director and Executive Vice President of Liberty. As set forth in Gregg's affidavit, which is filed herewith, Gregg has had *no involvement* with the Policy or any security agreements or arrangements related thereto. Gregg Aff., ¶ 7. This is not surprising, given that Gregg is a key member of Liberty's senior management, who oversees over ten thousand employees, who serve over ten thousand customers throughout the country. Gregg Aff., ¶¶ 3-4. Nothing will be gained, therefore, from forcing Gregg to appear for a deposition in order to state under oath, for a second time, that he has not been involved with Phineas, SwissRe, or the matters at issue in the Florida Litigation. Accordingly, the deposition Subpoena to Gregg should be quashed. See Jones, 219 F.R.D. at 77-78 (quashing third-party deposition subpoena where witness averred that he had no personal knowledge of relevant facts, and circumstances of case "point to the inexorable conclusion that Mr. Clinton has no relevant information to offer").

III. The Subpoena for Liberty's Deposition Should Be Quashed.

Because Liberty's testimony has no relevance to the Indemnity Agreement, the interpretation of which is the central issue in the Florida Litigation, the deposition Subpoena to Liberty is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, even though the deposition has been noticed for July 27, 2004, at 2 p.m., Phineas has not yet identified sufficiently narrow topics on which it seeks testimony pursuant to Rule 30(b)(6). See Shanahan Aff., Exs. A and C.

6

As set forth in the July 8th objection letter, it would be unduly burdensome (and, in certain instances a violation of confidence and privilege) for Liberty to produce a witness to testify about: (a) allegations made by other parties; (b) communications with Phineas or others that are entirely unrelated to the Policy; or (c) litigation involving other Amwest bonds that are totally unrelated to Phineas' security for the Policy. Shanahan Aff., Ex. C, ¶¶ 10-13. Accordingly, even if the Court permits Liberty's deposition to proceed at some time, Liberty does not have sufficient time, at this late date, to prepare and produce a witness for testimony on July 27th, the currently-noticed date, with regard to the overly broad and irrelevant topics set forth in the current version of the Liberty Subpoena. Id., Ex. C, ¶ 9.

In addition, as the Court is aware, the Democratic National Convention will be held in Boston during the week of July 26, 2004, which will result in significant disruption to travel in and out of the city. For that reason as well, the deposition of Liberty, if not cancelled altogether, should be rescheduled for a later date.

## CONCLUSION

For the reasons set forth herein, Liberty and Gregg respectfully request that the Court: (1) quash the deposition subpoena served on Gregg; (2) quash the deposition subpoena served on Liberty; and (3) award Liberty and Gregg their reasonable attorneys fees and costs associated with prosecution of this motion.

7

Respectfully submitted by,

LIBERTY MUTUAL INSURANCE
COMPANY and GARY R. GREGG,

By their attorneys,

*/s/ Sara Jane Shanahan*
Daniel P. Tighe (BBO#556583)
Sara Jane Shanahan (BBO#567837)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, Massachusetts 02110
(617) 542-9900

Dated: July 22, 2004

I hereby certify that a true copy
of the above document was
served upon the attorney of
record for each other party
by mail/hand/facsimile on:
7/22/04 */s/ Sara Jane Shanahan*

8