UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO.: 03-22921 CIV-ALTONAGA
Magistrate Bandstra
(Pending in the Southern District of Florida
Multi-District Business No. 04MBD10208
Judge Rya Zobel

SWISS REINSURANCE AMERICA
CORPORATION, a New York
corporation,
    Plaintiff
vs.
THE PHINEAS CORPORATION,
    Defendant
_____/

### DEFENDANT PHINEAS' OPPOSITION TO LIBERTY MUTUAL AND GARY GREGG'S EMERGENCY MOTION TO QUASH THIRD PARTY SUBPOENAS

Defendant, The Phineas Corporation, by and through undersigned counsel, hereby files this Opposition to the Emergency Motion to Quash of Liberty Mutual ("Liberty") and Gary Gregg ("Gregg") and states as follows:

### INTRODUCTION

The Motion of Liberty Mutual and Gary Gregg should be denied. The depositions should be allowed to proceed in compliance with the Federal Rules of Civil Procedure. Both depositions and the documents requested in these Subpoenas are relevant to the claims of Plaintiff Swiss Reinsurance and the defenses of The Phineas Corporation ("Phineas") in this case.

Liberty Mutual Insurance Company's and Gary Gregg's Emergency Motion/Memorandum of Law expressly concedes that Liberty issued a worker's compensation policy to Phineas under which it required Phineas to secure premium and deductible obligations by a $225,000 bond issued by Amwest Surety Insurance Company. Liberty was the obligee under that bond, and Swiss Re Amwest's reinsurer.

- 1 -

Amwest is now insolvent and that bond and alleged obligations related to it are the subject of this litigation.

Liberty and Gregg concede that Gregg oversees operating units providing lines of insurance for worker's compensation. Affidavit of Gary Gregg as ¶3.  As Director and Executive Vice President of Liberty overseeing lines of insurance, including worker's compensation insurance Mr. Gregg is likely to have knowledge regarding Liberty Mutual's policies, procedures and guidelines regarding requirements for collateral and security. Phineas, through its counsel, spoke to counsel for Liberty/Gregg last week and was informed by Liberty/Gregg's attorney that they were not sure who the appropriate decision maker to be deposed in this case was.  Similarly in its Motion, Liberty fails to identify the appropriate individual or individuals who may have relevant knowledge. Neither Liberty nor Gregg identify any individual other than Gregg with knowledge on Liberty's behalf relevant to this case. Gregg was subpoenaed because he was identified to Phineas' Director of Risk Management as an individual with relevant knowledge. [1]

Neither Liberty nor Gregg claims that the subpoenas call for production of any confidential, trade secret, propriety or other such information. Neither Gregg nor Liberty claims the subpoenas are technically deficient or that insufficient notice was provided. Counsel for Phineas has offered to reschedule the depositions but counsel for Gregg/Liberty has refused to provide alternate dates for the depositions. Counsel for Phineas has made plans to travel to Boston for the deposition.

---

[1] Elena Valdes, Phineas' Director of Risk Management is out of the country on vacation and is therefore unable to execute an Affidavit in support of this Response.

- 2 -

Significantly, Gregg does not deny being a decision maker with information relevant to this case.

The discovery cutoff in this case is August 27, 2004. Liberty/Gregg were given over a month notice of this deposition and their last minute "Emergency" Motion should be denied.

## LEGAL ARGUMENT

### I.    THE SUBPOENAS SEEK INFORMATION RELEVANT TO THIS CASE

Plaintiff Swiss Re's Complaint specifically alleges that Liberty is the obligee under the bond and that the bond guaranteed "certain obligations which The Phineas Corporation ("indemnitor") owed" to Liberty Mutual Insurance Company.  Complaint at ¶13, a copy of which is attached hereto Exhibit A.

Also attached to Swiss Re's Complaint in this case is the Collateral Agreement Bond, specifically naming Liberty (via its affiliate and/or former name Employers Insurance of Wausau) as the obligee. A copy of the Collateral Agreement Bond naming Liberty as the obligee is Exhibit B to the Swiss Re Complaint in this case.

In its Answer and Affirmative Defenses Phineas alleges as an affirmative defense Swiss Re's failure to join indispensable parties, specifically Liberty/Employers Insurance of Wausau, as the obligee under the bond attached to the Complaint and referred to in the Swiss Re Complaint in this case. See attached copy of Answer and Affirmative Defenses as Exhibit "C".

Liberty and Gregg concede in their Motion that Swiss Re claims that its obligations as the reinsurer for Amwest, the insolvent surety obligated to Liberty, "are

- 3 -

subject to Phineas' obligation to indemnify Swiss Re on the Amwest bond, or to provide security to support the Amwest bond."

Whether or not there is an obligation by Phineas to secure any remaining premium or deductible obligations to Liberty is relevant to the issue of whether or not Phineas has a duty to assume Amwest's security obligations to Liberty under the $225,000 bond. As Liberty concedes in its motion, this is the focus of the lawsuit. See Motion at 2 describing lawsuit as follows: "after Amwest was declared insolvent, a dispute arose between Swiss Re, who is Amwest's reinsurer, and Phineas with regard to which party, thereafter, had a duty to assume Amwest's security obligations to Liberty under the $225,000 bond." Liberty/Gregg Motion at 2. Indeed, the relevance of the information sought from Liberty and Gregg is best illustrated by voluminous amounts of discovery requested from Swiss Re, the Plaintiff in this case, to Phineas for information regarding Phineas' obligations to Liberty. See e.g., Swiss Re's Request for Production seeking *inter alia*, documentation regarding Liberty's "total risk relating to known claims under the policies"; documents "relating to any and all statements from (Liberty) to Phineas regarding any amounts due under the Security Agreements"; "all documents" relating to Phineas' payment to Liberty "of any premiums"; "all documents" relating to communications between Phineas and Liberty "concerning claims made under the policies"; "all documents relating to communications between Phineas and Liberty "concerning deductibles related to the policies." See attached copy of Request for Production as Exhibit "D".

- 4 -

Clearly, whether or not Liberty is entitled to a bond, and whether or not there is any exposure of Swiss Re based on any liability by Phineas to Liberty Mutual is at the heart of this case and the depositions of these witnesses should proceed.

## II.   LIBERTY AND GREGG HAVE FAILED TO MEET THEIR BURDEN

In general a party may obtain discovery if any non-privileged matter that is relevant to a claim or defense of any party. Fed.R.Civ.P. 26(b)(i). A party seeking a protective order or Motion to Quash a Subpoena has the burden of proving its necessity. *Dove v. Atlantis Capital Corp.*, 963 F.2d 15 (2d Cir. 1992); *Avirgan v. Hall*, 118 F.R.D. 252 (D.D.C. 1987); *Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494 (D.Conn. 1985) [burden is on objecting party to show that hardship or injustice will be caused by use of particular made of discovery]; *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323 (S.D. Fla. 1985) [party seeking to avoid disclosure of materials by protective order bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury.]; *Continental Illinois National Bank and Trust Company of Chicago v. Caton*, 130 F.R.D. 145 (D. Kan. 1990) [bare assertions that discovery will be unduly burdensome is insufficient to justify entry of an order staying discovery.]

The deposition/discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which Court's have long 'accorded a broad and liberal treatment to effectuate the purpose that civil trials in the federal courts [need not] be carried out in the dark.'" *In Re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2003). Indeed the rules provide for the taking of discovery by oral depositions, "regarding any matter, not privileged, that is relevant to the claim or defense of any

- 5 -

party" and that "relevant information need not be admissible." *In Re Subpoena Issued to Dennis Friedman supra* at 69.

Moreover, the rules generally do not place any initial burden on parties to justify their deposition and discovery requests. See e.g., Fed.R.Civ.P. 30(a)(1) "a party may take the deposition of any person... by deposition upon oral examination without leave of court".

A showing that discovery may involve some inconvenience and expense does not suffice to establish good cause for issuance of a protective order or to quash a subpoena. *Twin City Fire Insurance Company v. Employers Insurance of Wausau*, 124 F.R.D. 652 (D.Nev. 1989) [third party defendant was not entitled to stay discovery pending a decision on its motion to dismiss for failure to state a claim as court was not convinced that cross claim/counter-claimant had failed to state a cognizable claim.]

Liberty and Gregg have fail to meet their burden. Phineas is entitled to proceed with discovery in this case to develop the factual issues in this case including issues raised in the Complaint and Answer and Affirmative Defenses.

## CONCLUSION

For the foregoing reasons, Plaintiff's Emergency Motion for Protective Order should be denied.

Respectfully Submitted,

**KURZBAN KURZBAN WEINGER & TETZELI, P.A.**
Attorneys for Defendant
2650 SW 27th Avenue, 2nd Floor
Miami, Florida 33133
(305) 444-0060    FAX: (305) 444-3503

By: _____
      STEVEN M. WEINGER
      Fla. Bar No.: 280585
      HELENA M. TETZELI
      Fla. Bar No.:  759820

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed and faxed on this 26th day of July, 2004 to:    Marilyn Klinger, Esquire & Peter M. Cofield, Esquire, Sedgwick, Detert, Moran & Arnold, LLP, 801 South Figueroa Street, 18th Floor, Los Angeles, CA  90017-5556; Edward Etcheverry, Esq., Etcheverry Kouri & Harrison, LLP, 2500 Weston Road, Suite 400, Fort Lauderdale, FL  33331; Daniel F. Tighe, Esquire and Sara Jane Shanahan, Esquire, Griesinger, Tighe & Maffei, LLP, 176 Federal Street, Boston, Massachusetts  02110.

By: _____
      STEVEN M. WEINGER
      HELENA M. TETZELI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SWISS REINSURANCE AMERICA
CORPORATION, a New York
corporation,

          Plaintiff,

    v.

THE PHINEAS CORPORATION,

          Defendant.

CASE NO **03-22921**
**CIV-ALTONAGA**

*MAGISTRATE*
*BANDSTRA*

## COMPLAINT

    COMES NOW plaintiff, SWISS REINSURANCE AMERICA CORPORATION ("SWISS RE"), and hereby alleges as follows:

### JURISDICTION AND VENUE

    1.    SWISS RE is a corporation organized under the laws of the State of New York, with its principal place of business in the State of New York. Swiss Re is authorized to write insurance in, among other places, the States of Florida and California.

    2.    Upon information and belief, defendant THE PHINEAS CORPORATION is a corporation organized under the laws of the State of Florida with its principal place of business in Miami, Florida.

    3.    The amount in controversy as to each of the claims asserted herein exceeds $75,000.

    4.    This Court has jurisdiction of this matter under 28 U.S.C. sections 1332 and 1367(a), and venue in this District is proper under 28 U.S.C. 1391(a).



## GENERAL ALLEGATIONS

5.      Defendant, THE PHINEAS CORPORATION ("INDEMNITOR") requested non-party Amwest Surety Insurance Company ("Amwest"), as surety, to issue surety bonds on behalf of INDEMNITOR in connection with INDEMNITOR's various businesses.

6.      On or about May 20, 1999, in consideration for Amwest's issuance of surety bonds, and as an inducement to Amwest to issue such bonds, INDEMNITOR executed a Commercial Surety General Indemnity Agreement ("Indemnity Agreement"). A true and correct copy of the Indemnity Agreement is attached hereto as Exhibit "A" and is incorporated by this reference as though set forth fully herein.

7.      INDEMNITOR executed the Indemnity Agreement for the benefit of Amwest and Amwest's affiliates, subsidiaries or reinsurers, and any other person(s) or entity(ies) which Amwest might procure to act as surety or as a cosurety on any bond, or any other person or entity who executes a bond at Amwest's request.

8.      At all times relevant herein, SWISS RE was a reinsurer of certain bonds which Amwest issued. ) for benefit of WD.

### Terms of the Indemnity Agreement

9.      The Indemnity Agreement provides, among other things, that INDEMNITOR will exonerate, hold harmless, indemnify and keep indemnified SWISS RE from and against any and all losses, costs, damages, attorneys' fees and expenses of whatever kind or nature which arise by reason of, or in consequence, of Amwest or SWISS RE's execution of any bond or reinsurance on behalf of defendant THE PHINEAS CORPORATION. Exhibit A, ¶¶ 1 & 2.

10.     The Indemnity Agreement also provides that, until SWISS RE has been furnished with conclusive evidence of its discharge without loss from any bond, and until

2

SWISS RE has been otherwise fully indemnified as provided under the Indemnity Agreement, SWISS RE has the right of free access to INDEMNITOR's books, records, and accounts for the purpose of examining and copying them.  Exhibit A, ¶3(d).

11.    The Indemnity Agreement also provides that INDEMNITOR will, upon SWISS RE's request, procure SWISS RE's discharge from any bond and all liability by reason of such bond.  If such discharge is unattainable, the Indemnity Agreement provides that INDEMNITOR will, if requested by SWISS RE, either deposit collateral with SWISS RE, acceptable to SWISS RE, sufficient to cover all exposure under such bond or bonds or make provisions acceptable to SWISS RE for the funding of bonded obligations. Exhibit A, ¶3(d).

12.    In the Indemnity Agreement, INDEMNITOR warranted that it was specifically and beneficially interested in obtaining each bond which Amwest and/or Amwest and SWISS RE issued.  Exhibit A, ¶3(d).

### The Bonds and Reinsurance Agreement

13.    On or about August 31, 1999, in reliance on the Indemnity Agreement, Amwest issued a "Collateral Agreement Bond," Amwest Bond Number 125001942, on behalf of defendant THE PHINEAS CORPORATION (INDEMNITOR), in favor of non-party Liberty Mutual Insurance Company, in the penal amount of $225,000 (the "Amwest Bond").   The Amwest Bond guaranteed certain obligations which THE PHINEAS CORPORATION (INDEMNITOR) owed to Liberty Mutual Insurance Company.

14.    SWISS RE, in reliance on the Indemnity Agreement, reinsured the Amwest Bond by virtue of a Reinsurance Agreement, issued on August 31, 1999, in the amount of $2,914,000 (the "Reinsurance Agreement").  True and correct copies of the Amwest Bond

3

and the Reinsurance Agreement are attached hereto as Exhibit "B" and are incorporated by this reference as though set forth fully herein.

### *Amwest Liquidation*

15.    On or about June 7, 2001, Amwest became the subject of an Order of Liquidation, Declaration of Insolvency, and Injunction, entered by the District Court of Lancaster, Nebraska. True and correct copies of the Order of Liquidation and related Notice are attached hereto as Exhibit "C" and are incorporated by this reference as though set forth fully herein.

16.    Pursuant to the Order of Liquidation and Notice, all Amwest bonds were cancelled as of July 6, 2001.

### *SWISS RE's Request for Exoneration*

17.    SWISS RE has requested that INDEMNITOR procure SWISS RE's discharge from any liability under the Amwest Bond and Reinsurance Agreement, or, alternatively, that INDEMNITOR deposit with SWISS RE sufficient collateral to cover SWISS RE's exposure under the Bond.

18.    INDEMNITOR failed and refused, and continues to fail and refuse, to discharge SWISS RE's liability under the Bond and Reinsurance Agreement or to deposit collateral with SWISS RE in an amount and type sufficient to cover SWISS RE's exposure under the Bond.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Against All Defendants)

19.    SWISS RE realleges and incorporates by reference its Jurisdiction, Venue and General Allegations above as though set forth fully herein.

LA/525098v1

20.    INDEMNITOR has breached the Indemnity Agreement, by, among other things, failing to exonerate SWISS RE under the Amwest Bond and Reinsurance Agreement, failing to discharge SWISS RE's liability under the Bond and Reinsurance Agreement and/or failing to deposit collateral with SWISS RE in an amount and type sufficient to cover SWISS RE's exposure under the Amwest Bond.

21.    SWISS RE has performed all terms, covenants and conditions it is required to perform in connection with the Indemnity Agreement, except for those matters as to which it has been discharged.

22.    As a direct and proximate result of INDEMNITOR's breach of the Indemnity Agreement, SWISS RE has incurred, and will continue to incur, losses and expenses, including attorneys' fees, in the prosecution of this action.

WHEREFORE SWISS RE prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Specific Performance of Indemnity Agreement-- Against All Defendants)

23.    SWISS RE realleges and incorporates by reference its Jurisdiction, Venue and General Allegations and its First Cause of Action above as though set forth fully herein.

24.    INDEMNITOR's failure to exonerate SWISS RE, failure to discharge SWISS RE's liability under the Amwest Bond and Reinsurance Agreement and/or failing to deposit collateral with SWISS RE in an amount and type sufficient to cover SWISS RE's exposure under the Amwest Bond constitute a breach or breaches of the Indemnity Agreement.

25.    As a direct and proximate result of INDEMNITOR's breach of the Indemnity Agreement, SWISS RE is being irreparably harmed, and has been and will be incurring

5

liability, losses, costs and damages, including attorneys' fees, in the prosecution of this action.

WHEREFORE, SWISS RE prays for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION

#### (Quia Timet – Against All Defendants)

26.     SWISS RE realleges and incorporates by reference its Jurisdiction, Venue and General Allegations and its First and Second Causes of Action as though set forth fully herein.

27.     SWISS RE fears that it will continue to incur immediate and substantial claims, losses, costs, damages, attorneys' fees and expenses by reason of, or in consequence of, the Amwest Bond which Amwest issued, and which SWISS RE reinsured, at INDEMNITOR's special instance and request.

28.     INDEMNITOR is obligated, under the doctrine of Quia Timet, to post collateral security with SWISS RE upon SWISS RE's demand.

29.     SWISS RE is entitled to a prejudgment order requiring INDEMNITOR to post collateral with SWISS RE in an amount sufficient to cover any and all claims, losses, costs, damages, attorneys' fees and expenses incurred by reason of, or in consequence of, the Amwest and Cosurety Bonds issued at INDEMNITOR's special instance and request.

WHEREFORE, SWISS RE prays for judgment against INDEMNITOR as follows:

1.     For damages according to proof at trial;

2.     For prejudgment interest thereon at the legal rate;

3.     For reasonable attorneys' fees and expenses incurred herein;

4.     For costs of suit herein;

6

5.    For an order requiring INDEMNITOR to perform specifically the terms and conditions of the Indemnity Agreement, including the requirement that INDEMNITOR provide SWISS RE access to their books, records and accounts;

6.    For an order requiring INDEMNITOR to perform specifically the terms and conditions of the Indemnity Agreement, including the requirement that INDEMNITOR procure the discharge of SWISS RE by, among other things, posting a sufficient alternative form of security with the obligee on the Amwest Bond and providing SWISS RE with documented proof of such discharge;

7.    For an order requiring INDEMNITOR to perform specifically the terms and conditions of the Indemnity Agreement, including the requirement that INDEMNITOR deposit with SWISS RE collateral, in an amount of at least $225,000 to cover SWISS RE's exposure the Amwest Bond; and

8.    For such other and further relief as this Court may deem necessary and proper.

Respectfully submitted,

Marilyn Klinger (CA Bar #83508)
Peter M. Cofield (CA Bar #198417)
Sedgwick, Detert, Moran & Arnold LLP
801 South Figueroa Street, 18th Floor
Los Angeles, California 90017-5556
Telephone: (213) 426-6900
Facsimile: (213) 426-6921
peter.cofield@sdma.com

Attorneys for Plaintiff SWISS
REINSURANCE AMERICAN
CORPORATION

LA/525098v1

7

APR-09-2003  23:16         REDIT HND SURETY        LIBERTY NJ                              PAGE  02

 **Amwest**

**Amwest Surety Insurance Company**
140 Broadway, 21st Floor
New York, NY 10005-1101
Tel 212-344-7720   Fax 212-344-5960
www.amwest.com

2934

**Bond #125001942**

## COLLATERAL AGREEMENT BOND

Know all by these presents, that we THE PHINEAS CORPORATION (hereinafter called "Principal"), as Principal and AMWEST SURETY INSURANCE COMPANY, a corporation organized and existing under the laws of the State of NEBRASKA and authorized to transact business in the State of WISCONSIN (hereinafter called "Surety"), as Surety, are held and firmly bound unto EMPLOYERS INSURANCE OF WAUSAU A Mutual Company headquartered at Wausau, Wisconsin (hereinafter called "Obligee"), as Obligee in the penal sum of TWO HUNDRED TWENTY FIVE THOUSAND AND 00/100 DOLLARS ($225,000.00), good and lawful money of The United States of America, for the payment of which, well and truly to be made, we bind ourselves, our heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.

Whereas, the Principal and Obligee have executed letters of agreement and contractors of insurance (hereinafter called Agreements) which provide, in part, for payment by the Principal to the Obligee of certain sums due or to become due under the terms thereof.

Now, therefore, the condition of this obligation is such, that if the Principal shall well and truly make all payments when due according to the terms of said Agreements, then this obligation to be void; otherwise this obligation shall remain in full force and effect and the Principal and Surety do jointly and severally bind themselves to pay amounts due the Obligee in the manner prescribed herein subject only to the following conditions:

1.  The Obligee's statement to the Surety of the amount due, either as security or reimbursement or both, pursuant to the Agreements, shall be absolute proof of the existence and extent of the liability of the Principal and the Surety to the Obligee hereunder.

2.  The Principal and Surety warrant and agree that claims made upon this bond sent certified mail to the Surety at 140 Broadway, 21st Floor, New York, NY 10005, accompanied by the Obligee's statement of the amount due, will result in payment of the claimed amount to the Obligee by the Surety or the Principal within thirty (30) days of such mailing.

3.  Failure to reimburse or pay the Obligee as herein provided shall cause the Principal and the Surety to be additionally liable for any and all reasonable costs and expenses,



including attorney's fees, incurred by the Obligee in enforcing this bond, such liability shall be in addition to the bond penalty;

4.　Without limiting the provisions of paragraph 3 above, multiple claims are permitted on this bond up to the total bond penalty in the aggregate.

5.　Forbearance by the Obligee in enforcing any conditions of the Agreements or this bond shall not waive or abridge any right of the Obligee hereunder. Extensions of time granted the Principal, or other changes or modification to the Agreements, shall not change or diminish the obligation of this bond and the Surety hereby waives notice of them.

6.　This bond shall be continuous until canceled pursuant to paragraph 7.

7.　This bond may be canceled by the Surety by sending advanced written notice, certified mail, to the Obligee stating when, not less than 90 days thereafter, such cancellation shall be effective, after which the liability of the Surety shall cease except for claims made upon the Surety prior to the effective date of cancellation. It is understood that the full penalty of this bond shall be available during its effective period to secure, cover and extend to any and all obligations of the Principal to the Obligee under the Agreements, past, present and potential. It is understood that if this bond is canceled by the Surety, the Principal is obligated to provide the Obligee a substitute bond or letter of credit acceptable to the Obligee. If the Principal fails to deliver a substitute bond or letter of credit prior to the effective date of such cancellation, the Obligee may claim the full penalty of this bond.

Signed and sealed by the Principal and the Surety on this 31st day of August 1999.

Principal                                          Surety

By: The Phincss Corporation              By: Amwest Surety Insurance Company

Name _____             Name _Karen L. Martin_____
                                                              Karen L. Martin

Title _SECRETORY_____          Title: Attorney-In-Fact

APR-08-2003  23:17    EDTT AND SURETY    LIBERTY AUTO    PAGE  04

# LIMITED POWER OF ATTORNEY

## Amwest Surety Insurance Company
## Far West Insurance Company

POWER NUMBER  0001005644

This document is printed on white paper containing the artificial watermarked logo ( ) of Amwest Surety Insurance Company on the back. Only unaltered originals of the Limited Power of Attorney ("POA") are valid. This POA may not be used in conjunction with any other POA. No representations or warranties regarding this POA may be made by any person. This POA is governed by the laws of the State of Nebraska and is only valid until the expiration date. Amwest Surety Insurance Company and Far West Insurance Company (collectively the "Company") shall not be liable on any limited POA which is fraudulently produced, forged or otherwise distributed without the permission of the Company. Any party concerned about the validity of this POA or an accompanying Company bond should call your local Amwest branch office at  (310) 344-7720.

KNOW ALL BY THESE PRESENT, that Amwest Surety Insurance Company, a Nebraska corporation and Far West Insurance Company, a Nebraska corporation (collectively the "Company"), do hereby make, constitute and appoint:

Edward V. Mahony
Karen L. Mardis
Irma Lassalle
John Ventura
Victaire D. Vincent
Annette C. Albanese
As Employees of Amwest Surety Insurance Co

its true and lawful Attorney-in-fact, with limited power and authority for and on behalf of the Company as surety to execute, deliver and affix the seal of the company thereto if a seal is required on bonds, undertakings, recognizances, reinsurance agreement for a Miller Act or other performance bond or other written obligations in the nature thereof as follows:

All Bonds up to $25,000,000.00

and to bind the company thereby. This appointment is made under and by authority of the By-Laws of the Company, which are now in full force and effect.

I, the undersigned secretary of Amwest Surety Insurance Company, a Nebraska corporation and Far West Insurance Company, a Nebraska corporation, DO HEREBY CERTIFY that this Power of Attorney remains in full force and effect and has not been revoked and furthermore, that the resolutions of the Board of Directors of both Amwest Surety Insurance Company and Far West Insurance Company set forth on this Power of Attorney, and that the relevant provisions of the By-Laws of each company, are now in full force and effect.

Bond No.  125001942    Signed & sealed this 31st day of  August    1999    _Karen G. Cohen_
Karen G. Cohen, Secretary

* * * * * * * * * * * * * *    RESOLUTIONS OF THE BOARD OF DIRECTORS    * * * * * * * * * * * * * *
This POA is signed and sealed by facsimile under and by the authority of the following resolutions adopted by the Board of Directors of Amwest Surety Insurance Company at a meeting duly held on December 15, 1975 and Far West Insurance Company at a meeting duly held on July 28, 1983:
RESOLVED, that the President or any Vice President, in conjunction with the Secretary or any Assistant Secretary, may appoint attorneys-in-fact or agents with authority as defined or limited in the instrument evidencing the appointment in each case, for and on behalf of the Company, to execute and deliver and affix the seal of the Company to bonds, undertakings, recognizances, and suretyship obligations of all kinds; and said officers may remove any such attorney-in-fact or agent and revoke any POA previously granted to such person.
RESOLVED FURTHER, that any bond, undertaking, recognizance, or suretyship obligation shall be valid and bind upon the Company:
(i)    when signed by the President or any Vice President and attested and sealed (if a seal be required) by any Secretary or Assistant Secretary; or
(ii)    when signed by the President or any Vice President or Secretary or Assistant Secretary, and countersigned and sealed (if a seal be required) by a duly authorized attorney-in-fact or agent; or
(iii)    when duly executed and sealed (if a seal be required) by one or more attorneys-in-fact or agents pursuant to and within the limits of the authority evidenced by the power of attorney issued by the Company to such person or persons.
RESOLVED FURTHER, that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any POA or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the Company; and such signature and seal when so used shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, Amwest Surety Insurance Company and Far West Insurance Company have caused these present to be signed by its proper officers, and its corporate seals to be hereunto affixed this 25th day of September, 1996.

_John E. Savage_    _Karen G. Cohen_
John E. Savage, President    Karen G. Cohen, Secretary

State of California
County of Los Angeles
On September 25, 1996 before me, Peggy B. Lofton Notary Public, personally appeared John E. Savage and Karen G. Cohen, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and seal official seal.

Signature  _Peggy B. Lofton_                                (Seal)

PEGGY E. LOFTON
Commission #1100606
Notary Public — California
Los Angeles County
My Comm. Expires Aug 6, 1999

5230 Las Virgenes Road  Calabasas, CA 91302    TEL 818 871-2000


# Amwest

**NOTARY ACKNOWLEDGMENT**

State of _New York_____

County of _New York_____

On ___8/31/99___ before me, _Irma Lassalle_____ (here insert name)
Notary Public, personally appeared

_Karen L. Martin_____

personally known to me (or proven to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

IRMA LASSALLE
Notary Public, State of New York
No. 41-4961673
Qualified in Queens County
Commission Expires May 20, 19 _2001_

Signature _Irma Lassalle_____ (Seal)

| CAPACITY CLAIMED BY SIGNER | | | SIGNER REPRESENTING |
|---|---|---|---|
| | | | NAME OF PERSON(S) ENTITIES |
| ☐ INDIVIDUALS | ☐ PARTNERS | ☐ GUARDIAN/CONSERVATOR | _Amwest Surety Insurance Company_ |
| ☐ CORPORATE OFFICERS | ☒ ATTORNEY-IN-FACT | ☐ OTHER | _140 Broadway, 21st Floor_ |
| | ☐ TRUSTEE(S) | | _New York, NY 10005_ |

| **ATTENTION NOTARY:** Although the information requested below is optional, it could prevent fraudulent attachment of this certificate. | |
|---|---|
| THIS  CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED HEREIN: | Document Title or Type: _____ <br> Number of Pages: _____ Document Date: _____ <br> Signer(s) other than named above: _____ |

BM-A1004 (8/97)



# E ⟩ CIAL STATEMENT - DECEMB  1, 1998
## AmWEST SURETY INSURANCE COMPANY

| ASSETS | | LIABILITIES, SURPLUS AND OTHER FUNDS | |
|---|---|---|---|
| Bonds | 71,063,419 | Losses and Loss adjustment expenses | 16,028,095 |
| Preferred stocks | 6,038,022 | Contingent commission | 2,068,220 |
| Common stocks | 13,253,466 | Other expenses | 5,108,927 |
| Mortgage loans | 553,363 | Taxes, licenses & fees | 740,058 |
| Real estate | 439,969 | Unearned premiums | 35,580,517 |
| Cash on hand and on deposit | 2,304,744 | Funds held on account of others | 23,505,884 |
| Short term investments | 2,430,853 | Payable to parent, subsidiaries and affiliates | 1,740,319 |
| Other invested assets | 2,008,652 | Brokers' commission payable | 31,788 |
| Agent's balances | 11,045,749 | | |
| Reinsurance Recoverable | 2,983,716 | | |
| Federal Income Tax recoverable | 443,725 | | |
| EDP equipment | 1,027,276 | | |
| Accrued Interest | 1,028,833 | | |
| Other admitted assets | 10,458,056 | | |
| **TOTAL ASSETS** | **126,107,831** | **TOTAL LIABILITIES** | **85,551,805** |
| | | Capital Stock | 4,000,000 |
| | | Surplus note | 8,000,000 |
| | | Paid-in surplus | 6,590,000 |
| | | Unassigned funds | 20,936,225 |
| | | Surplus as regards policyholders | 38,526,225 |
| | | Total liabilities and surplus | 126,107,831 |

STATE OF:    California

COUNTY OF:    Los Angeles

SUSAN D. KRISS
Commission # 1165471
Notary Public - California
Los Angeles County
My Comm. Expires Jan 9, 2002

John E. Savage, President of Amwest Surety Insurance Company, being duly sworn deposes and says that he is the above described officer of said Company; that said Company is a corporation duly organized, existing and engaging in business as a surety company under and by virtue of the laws of the State of Nebraska and has duly complied with all requirements of the laws of the said State applicable to said Company and is duly qualified to act as Surety under such laws; that the above is a true statement of the Assets and Liabilities of said Company of the 31st day of December 1998.

Subscribed and sworn to before me this

_25th_ day of _March_, 1999

_Susan D. Kriss_
Notary

_John E. Savage_
John E. Savage
President

/sdk/lcsfs.304

APR-08-2003  23:18

PAGE ONE OF TWO PAGES

## REINSURANCE AGREEMENT IN FAVOR OF

| | |
|---|---|
| **1. DIRECT WRITING COMPANY**<br><br>Amwest Surety Insurance Company<br>140 Broadway, 21st Floor<br>New York, NY 10005 | **1A. DATE DIRECT WRITING COMPANY EXECUTES THIS AGREEMENT**<br><br>August 31, 1999<br><br>**1B. STATE OF INCORPORATION**<br><br>Nebraska |
| **2. REINSURING COMPANY**<br><br>Swiss Reinsurance America Corporation<br>237 Park Avenue<br>New York, NY 10017 | **2A. AMOUNT OF THIS REINSURANCE**<br><br>$ 2,914,000.00<br>**2B. DATE REINSURING COMPANY EXECUTES THIS AGREEMENT**<br>August 31, 1999<br>**2C. STATE OF INCORPORATION**<br><br>New York |

**3. DESCRIPTION OF BOND**

| **3A. DESCRIPTION OF BOND (Type, purpose, etc.) including Obligee** | **3B. PENAL SUM OF BOND**<br><br>$ 115,000.00 | |
|---|---|---|
| Collateral Agreement Bond | **3C. DATE OF BOND**<br><br>August 31, 1999 | **3D. BOND NO.**<br><br>125001942 |
| | **3E. PRINCIPAL**<br><br>The Phineas Corporation | |
| | **3F. STATE OF INCORPORATION (if co-states principal)**<br><br>Florida | |

**AGREEMENT:**

(a) The Direct Writing Company named above is bound as a surety to the above-named obligee, on the bond described above, wherein the above named is the principal. The bond is given for the protection of the obligee and the Direct Writing Company has applied to the above Reinsuring Company to be reinsured and counter-secured in the amount shown opposite the name of the Reinsuring Company (referred to as the "Amount of this Reinsurance"), or for whatever amount less than the "Amount of this Reinsurance" the Direct Writing Company is liable to pay under or by virtue of the bond.

(b) For a sum mutually agreed upon, paid by the Direct Writing Company to the Reinsuring Company which acknowledges its receipt, the parties to this Agreement covenant and agree to the terms and conditions of this agreement.

**TERMS AND CONDITIONS:**

The purpose and intent of this agreement is to guarantee and indemnify the obligee against loss under the bond to the extent of the "Amount of this Reinsurance," or for any less sum than the "Amount of this Reinsurance," that is owing and unpaid by the Direct Writing Company to the obligee.

**THEREFORE:**

1. If the Direct Writing Company fails to pay any default under the bond equal to or in excess of the "Amount of this Reinsurance," the Reinsuring Company covenants and agrees to pay to the obligee the "Amount of this Reinsurance." If the Direct Writing Company fails to pay to the obligee any default for a sum less than the "Amount of this Reinsurance" the Reinsuring Company covenants and agrees to pay to the obligee the full amount of the default, or so much thereof that is not paid to the obligee by the Direct Writing Company.

2. The Reinsuring Company further covenants and agrees that in case of default on the bond for the "Amount of this Reinsurance," or more, the obligee may sue the Reinsuring Company for the "Amount of this Reinsurance" or for the full amount of the default when the default is less than the "Amount of this Reinsurance."

**WITNESS:**

The Direct Writing Company and the Reinsuring Company, respectively, have caused this Agreement to be signed and impressed with their respective corporate seals by officers possessing power to sign this instruments, and to be duly attested to by officers empowered thereto, on the day and date above-written opposite their respective names.

BA-1008 (6/98)

APR-08-2003  23:18    ...EDIT AND SURETY    LIBERTY MUT    2055218765    P.10

4. SURETY WRITERS COMPANY
(2) SURETY SIGNATURE

3A. (1) SIGNATURE

*Karen L. Martin*

3B. (1) NAME AND TITLE (Typed)

Karen L. Martin, Attorney-in-Fact

(2) NAME AND TITLE (Typed)

J.T. Neary, Underwriter

Corporate
Seal

5. SURETY WRITERS COMPANY
(2) SURETY SIGNATURE

3C. (1) SIGNATURE

3D. (1) NAME AND TITLE (Typed)

Edward V. Mahoney, Attorney-in-Fact

(2) NAME AND TITLE (Typed)

John Ventura, Underwriter

Corporate
Seal

BA-1006 (8/96)

## Financial Statement - December 31, 1998

### Admitted Assets

**Bonds:**

| | |
|---|---|
| United Statement Goverment | $2,631,770,426 |
| Canadian Goverment | 6,910,841 |
| All Other Bonds | 23,659,903 |
| **Total Bonds** | **$2,662,241,276** |
| Short Term Investments | 306,869,738 |

**Stocks:**

| | |
|---|---|
| Public Utility | 101,342,014 |
| Bank, Trust and Insurance Company | 115,841,857 |
| Industrial and Miscellaneous | 1,449,710,245 |
| **Total Stocks** | **$1,666,993,816** |

| | |
|---|---|
| Cash in Banks and Office | 8,775,766 |
| Assumed Reins. Premium. Balance in Course of Collection | (145,209,610) |
| Assumed Reins. Premium Installment Balance Deferred | 142,431,869 |
| Funds Deposit W/ Ceding Reinsurers | 36,360,049 |
| Reinsurance Recoverable on Loss Payments | 65,182,465 |
| Interest and Dividend Accrued | 23,160,482 |
| Other Assets | 133,695,386 |
| **Total Admited Assets** | **$4,692,377,228** |

### Liabilities
### Capital and Surplus

| | |
|---|---|
| Reserve for Unearned Premiums | $321,954,872 |
| Reserve for Outstanding Losses | 1,781,256,656 |
| Reserve for Loss Adjustment Expenses | 363,834,598 |
| Funds Held Under Reins. Treaties | 371,431,111 |
| Loss Balances in Course of Payment | 62,174,632 |
| Reserve for Unauthorized Reinsurance | 50,638,756 |
| Other Reserves | 339,347 |
| Other Liabilities | 140,591,921 |
| **Total Liabilities** | **$3,112,221,636** |

| | |
|---|---|
| Capital | 6,000,000 |
| Gross Paid in and Contributed Surplus | 963,357,873 |
| Surplus | 910,816,783 |
| Treasury Stock at Cost | (100,016,333) |
| **Surplus to Policyholders** | **$1,780,158,303** |
| **Total Liabilities, Capital and Surplus** | **$4,692,377,228** |

Failure of items to add is due to the dropping of cents

Securities valued in this statement at $52,613,470 are deposited with the State Departments and the Canadian Goverment as required by law.



I, Christopher McNulty, Member of Senior Management and Asst. Controller of the Swiss Reinsurance America Corporation, do hereby certify that the foregoing is a true copy of the financial statement of such company as of December 31, 1998.

**State of New York**
**County of New York**

Member of Senior Management
and Assistant Controller

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 03-22921 CIV-ALTONAGA
Magistrate Bandstra

SWISS REINSURANCE AMERICA
CORPORATION, a New York
corporation,
          Plaintiff

vs.

THE PHINEAS CORPORATION,
          Defendant

_____/

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

The Phineas Corporation by and through undersigned counsel files this Answer and Affirmative Defenses and states as follows:

### ANSWER

1.    Without knowledge and therefore denied.

2.    Admitted.

3.    Denied.

4.    Without knowledge and therefore denied.

5.    Denied except to admit that a single surety bond was issued upon information and belief although a copy is not attached to the Complaint.

6.    Without knowledge and therefore denied.   Exhibit A attached to the Complaint is illegible.   Telephone calls have been made to opposing counsel's office for a legible copy. Upon receipt of a legible copy it is believed that the Defendant will be able to acknowledge that the document is a true and correct copy of a document executed by The Phineas Corporation although The Phineas Corporation will still be without knowledge and therefore deny the remaining portions of paragraph 6.

- 1 -

7.    Denied although Defendant admits that the definition of surety contained in paragraph 1 of Exhibit A is a true and correct copy of that portion of the Commercial Surety General Indemnity Agreement.

8.    Without knowledge and therefore denied.

9.    Denied.

10.    Without knowledge due to the illegible nature of paragraph 3(d) of Exhibit A and therefore denied.

11.    Without knowledge due to the illegible nature of paragraph 3(d) of Exhibit A and therefore denied.

12.    Without knowledge due to the illegible nature of paragraph 3(d) of Exhibit A and therefore denied.

13.    Without knowledge and therefore denied except to admit that the photocopy of the two page "Collateral Agreement Bond" attached to the Complaint is a true and correct copy of the actual document executed by The Phineas Corporation.

14.    Without knowledge and therefore denied.

15.    Without knowledge and therefore denied.

16.    Without knowledge and therefore denied.

17.    Denied.

18.    Denied.

19.    The Phineas Corporation incorporates by reference its responses as if fully set forth herein.

20.    Denied.

21.    Without knowledge and therefore denied.

– 2 –

22.    Without knowledge and therefore denied.

23.    The Phineas Corporation incorporates by reference its responses as if fully set forth herein.

24.    Denied.

25.    Denied.

26.    The Phineas Corporation incorporates by reference its responses as if fully set forth herein.

27.    Without knowledge and therefore denied.

28.    Denied.

29.    Denied.

## AFFIRMATIVE DEFENSES

1.    Plaintiff has failed to join indispensable parties, to wit:  The obligee under the bond referred to as Employers Insurance of Wausau in the Collateral Agreement Bond attached to the Complaint and referred to as Liberty Mutual Insurance Company in paragraph 13 of Swiss Reinsurance's Complaint.

2.    The Plaintiff has failed to comply with conditions precedent to the cancellation of the bond, including but not limited to, notice pursuant to the documents attached to the Complaint.

3.    The Plaintiff is not a third party beneficiary of the Commercial Surety General Indemnity Agreement (an illegible copy of which is attached to the Complaint as Exhibit A).

4.    The "First Cause of Action" fails to state a cause of action because it does not allege any facts which establish a breach of any agreement between The Phineas Corporation and Swiss Reinsurance.

- 3 -

5.    The "Second Cause of Action" asserted by Swiss Reinsurance does not state a cause of action as it does not allege facts sufficient to create a right of specific performance pursuant to law and because Swiss Reinsurance failed to comply with conditions precedent.

6.    The "Third Cause of Action" fails to state a cause of action as it improperly incorporates all of the previous allegations of the Complaint including all of the allegations of the First and Second Causes of Action and because it fails to allege asserted elements to establish a claim for quia timet even to the extent such a cause of action exists and permitted under the circumstances which Defendant specifically denies.

7.    The Phineas Corporation has already posted adequate security by posting a Certificate of Deposit in the amount of $255,000 and additional security is not required.

8.    Plaintiff's claim are barred by the relevant statute of limitations, including but not limited to claims for specific performance, which are subject to a one year statute of limitations. F.S. §95.11(5)(a).

9.    Plaintiff claims are barred by the doctrine of laches and for waiver and by estoppel as to Plaintiff's delay in asserting its claims, and the resulting prejudice to Defendant.

Respectfully Submitted,

**KURZBAN KURZBAN WEINGER & TETZELI, P.A.**
Attorneys for Defendant
2650 SW 27th Avenue, 2nd Floor
Miami, Florida 33133
(305) 444-0060        FAX:  (305) 444-3503

By:_____

STEVEN M. WEINGER
Fla. Bar No.: 280585
HELENA M. TETZELI
Fla. Bar No.:  759820

- 4 -

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed on this 20th day of November, 2003 to:  Marilyn Klinger, Esquire & Peter M. Cofield, Esquire, Sedgwick, Detert, Moran & Arnold, LLP, 801 South Figueroa Street, 18th Floor, Los Angeles, CA 90017-5556.

By:_____

STEVEN M. WEINGER
HELENA M. TETZELI

- 5 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SWISS    REINSURANCE    AMERICA    CASE NO. 03-22921 CIV-ALTONAGA
CORPORATION, a New York corporation,    Magistrate Bandstra

        Plaintiff,

   v.

THE PHINEAS CORPORATION,

        Defendant.

---

## PLAINTIFF SWISS REINSURANCE AMERICA CORPORATION'S REQUEST FOR PRODUCTION TO DEFENDANT THE PHINEAS CORPORATION

PROPOUNDING PARTY:    SWISS REINSURANCE AMERICA CORPORATION

RESPONDING PARTY:    THE PHINEAS CORPORATION

SET NO.:    One

      Pursuant to Federal Rules of Civil Procedure, Rule 34, plaintiff, Swiss Reinsurance America Corporation ("SWISS RE"), propounds the following requests for defendant, The Phineas Corporation ("PHINEAS,") to produce documents and things at the offices of SWISS RE's counsel, Sedgwick, Detert, Moran & Arnold, LLP, located at 801 South Figueroa Street, Los Angeles, California 90017-5556 on or before thirty (30) days from the date of service of this request. The following requests are continuing so that if, at any time, PHINEAS obtains custody or control of documents or things within the scope of these requests, PHINEAS is requested to make a supplemental response within 30 days thereafter as though SWISS RE had served upon PHINEAS new requests to supplement PHINEAS' prior responses.

## INSTRUCTIONS

A. In producing the documents requested, furnish all documents known or available to PHINEAS, regardless of whether these documents are directly in PHINEAS' custody or control, or in the custody or control of its agents, employees or representatives, or in the custody or control of PHINEAS' attorneys or their agents, employees or representatives.

B. If any of the documents cannot be produced in full, PHINEAS is required to produce them to the fullest extent possible, specifying clearly the reasons for its inability to produce the remainder and stating whatever information, knowledge or belief PHINEAS has concerning the unproduced portion.

C. If any documents or things requested were at one time in existence but are no longer in existence, please so state specifying for each document:

1. the type of document;

2. the type of information contained therein;

3. the date upon which it ceased to exist;

4. the circumstances under which it ceased to exist;

5. the identity of all persons having knowledge of the circumstances under which it ceased to exist; and

6. the identity of all persons having knowledge or who had knowledge of the content thereof.

D. If any document is withheld or communication not identified because of a claim of privilege or work-product, provide the information required by Federal Rules of Civil Procedure, Rule 26(b)(5).

2

E.    Federal Rules of Civil Procedure, Rule 34(b) requires PHINEAS to produce the documents as they are kept in the ordinary course of business or organized and labeled to correspond with a particular request set forth below.

## DEFINITIONS

1.    "PHINEAS" means and refer to The Phineas Corporation, Sunrise Communities, Inc., and any all companies or entities related to or affiliated with The Phineas Corporation and Sunrise Communies, Inc. any and all their agents, representatives, officers, directors, employees, attorneys and accountants.

2.    "EMPLOYERS" means and refers to Employers Insurance of Wausau, Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM Insurance Corporation, or the First Liberty Insurance Corporation, and any and all of their agents, representatives, officers, directors, employees, attorneys and accountants.

3.    "AMWEST" means and refers to Amwest Surety Insurance Company, and any and all of its agents, representatives, officers, directors, employees, attorneys and accountants.

4.    "AON" means and refers to Aon Risk Services of New York, Inc., and any and all of its agents, representatives, officers, directors, employees, attorneys and accountants.

5.    "SWISS RE" means and refers to Swiss Reinsurance America Corporation, and any and all of its agents, representatives, officers, directors, employees, attorneys and accountants.

6.    "BOND" means and refers to the Amwest bond, Bond 125001942, including all addendums, riders, or endorsements.

7.    "POLICIES" means and refers to all insurance policies issued by EMPLOYERS to PHINEAS, including, but not limited to, Policy No. 4810-00-000580 and the contracts of insurance referenced in the BOND, including all amendments, endorsements and riders thereto.

8.    "SECURITY AGREEMENTS" means and refers to any and all Security Agreements between EMPLOYERS and PHINEAS, including the Letters of Agreement referenced in the BOND, and including any agreement for guarantee of deductible reimbursement or premium obligations owed by PHINEAS to EMPLOYERS, including any and all amendments thereto.

9.    "REINSURANCE ENDORSEMENT" means and refers to the SWISS RE reinsurance endorsement to the BOND.

10.    "INDEMNITY AGREEMENT" means and refers to the Commercial Surety General Indemnity Agreement which The Phineas Corporation executed August 9, 1999, and which is the subject of the present action.

11.    "PERSON" includes any natural person, firm, association, organization, partnership, business, trust, corporation or entity.

12.    The terms "all" and "any" shall mean "any and all."

13.    The terms "concerning," "reflecting," "referring to" or "relating to," in addition to their other customary and usual meanings, shall mean discussing, constituting, evidencing, mentioning, pertaining to, assessing, embodying, recording, stating, describing, touching upon or summarizing.

14.    "DOCUMENT," as used herein, means all things within the meaning of Federal Rules of Civil Procedure, Rule 34(a), and all "writings," "recordings," and "photographs," whether "original" or "duplicate," within the meaning of Federal Rules of

4

Evidence, rule 1001 including, without limitation, all documents in PHINEAS' possession or control up to the date of the response hereto maintained in any tangible or intangible form, including electronically.

15.    "COMMUNICATION" means any written, oral or electronic communication.

## REQUESTS FOR PRODUCTION

**Request for Production No. 1**

All DOCUMENTS concerning the SECURITY AGREEMENTS.

**Request for Production No. 2**

All DOCUMENTS concerning the POLICIES.

**Request for Production No. 3**

All DOCUMENTS concerning the BOND.

**Request for Production No. 4**

All DOCUMENTS concerning the REINSURANCE ENDORSEMENT.

**Request for Production No. 5**

All DOCUMENTS concerning the INDEMNITY AGREEMENT.

**Request for Production No. 6**

All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and AON concerning the SECURITY AGREEMENTS.

**Request for Production No. 7**

All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and AON concerning the POLICIES.

**Request for Production No. 8**

All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and AON concerning the BOND.

5

LA/553079v1

**Request for Production No. 9**

      All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and AON concerning the REINSURANCE ENDORSEMENT.

**Request for Production No. 10**

      All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and AON concerning the INDEMNITY AGREEMENT.

**Request for Production No. 11**

      All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and AMWEST.

**Request for Production No. 12**

      All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning the SECURITY AGREEMENTS.

**Request for Production No. 13**

      All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning the POLICIES.

**Request for Production No. 14**

      All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning the BOND.

**Request for Production No. 15**

      All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning the REINSURANCE ENDORSEMENT.

**Request for Production No. 16**

      All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning the INDEMNITY AGREEMENT.

**Request for Production No. 17**

All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and SWISS RE.

**Request for Production No. 18**

All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning collateral relating to the SECURITY AGREEMENTS.

**Request for Production No. 19**

All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning collateral relating to the POLICIES.

**Request for Production No. 20**

All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning premiums relating to the SECURITY AGREEMENTS.

**Request for Production No. 21**

All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning premiums relating to the POLICIES.

**Request for Production No. 22**

All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning deductibles relating to the SECURITY AGREEMENTS.

**Request for Production No. 23**

All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning deductibles relating to the POLICIES.

**Request for Production No. 24**

All DOCUMENTS relating to COMMUNICATIONS between PHINEAS and EMPLOYERS concerning claims made under the POLICIES.

7

**Request for Production No. 25**

All DOCUMENTS relating to PHINEAS' deposit with EMPLOYERS of any collateral security relating to the SECURITY AGREEMENTS

**Request for Production No. 26**

All DOCUMENTS relating to PHINEAS' deposit with EMPLOYERS of any collateral security relating to the POLICIES.

**Request for Production No. 27**

All DOCUMENTS relating to PHINEAS' payment to EMPLOYERS of any premiums relating to the SECURITY AGREEMENTS.

**Request for Production No. 28**

All DOCUMENTS relating to PHINEAS' payment to EMPLOYERS of any premiums relating to the POLICIES.

**Request for Production No. 29**

All DOCUMENTS relating to PHINEAS' payment to EMPLOYERS of any deductibles relating to the SECURITY AGREEMENTS.

**Request for Production No. 30**

All DOCUMENTS relating to PHINEAS' payment to EMPLOYERS of any deductibles relating to the POLICIES.

**Request for Production No. 31**

All DOCUMENTS relating to any and all statements from EMPLOYERS to PHINEAS regarding any amounts due under the SECURITY AGREEMENTS.

**Request for Production No. 32**

All DOCUMENTS regarding EMPLOYERS' total risk relating to known claims under the POLICIES.

8

**Request for Production No. 33**

All DOCUMENTS concerning the total collateral security EMPLOYERS currently

holds relating to the SECURITY AGREEMENTS

Respectfully submitted,

Marilyn Klinger (CA Bar #83508)
Peter M. Cofield (CA Bar #198417)
Sedgwick, Detert, Moran & Arnold LLP
801 South Figueroa Street, 18th Floor
Los Angeles, California 90017-5556
Telephone: (213) 426-6900
Facsimile: (213) 426-6921
peter.cofield@sdma.com

Attorneys for Plaintiff SWISS
REINSURANCE AMERICAN
CORPORATION, a New York corporation

9

## PROOF OF SERVICE

### Swiss Reinsurance America Corporation v. The Phineas Corporation

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Sedgwick, Detert, Moran & Arnold LLP, 801 South Figueroa Street, 18th Floor, Los Angeles, California 90017-5556. On June 18, 2004, I served the within document(s):

**PLAINTIFF SWISS REINSURANCE AMERICA CORPORATION'S REQUEST FOR PRODUCTION TO DEFENDANT THE PHINEAS CORPORATION**

☐   FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

☒   MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐   OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via .

| | |
|---|---|
| Steven M. Weinger, Esq.<br>Helena M. Tetzeli, Esq.<br>KURZBAN KURZBAN WEINGER & TETZELI, P.A.<br>2650 SW 27th Avenue, 2nd Floor<br>Miami, FL 33133<br>Tel: (305) 444-0060<br>Fax: (305) 444-3503 | Attorneys For Defendant |
| Edward Etcheverry, Esq.<br>Jeffrey Geller, Esq.<br>ETCHEVERRY KOURI & HARRISON LLP<br>2500 Weston Road, Suite 400<br>Fort Lauderdale, FL 33331<br>Tel: (954) 217-7070<br>Fax: (954) 217-7071 | Co-Counsel for SWISS REINSURANCE AMERICAN CORPORATION |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 18, 2004, at Los Angeles, California.

Lisa C. Posso

LA/538607v1